

**SO ORDERED.**

**SIGNED this 13 day of March, 2009.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **ABDOULIE MADIKAY FAAL** | 08-00451-8-ATS |
| **BINNEH BAYO FAAL** | |
|     DEBTORS | |
| | |
| **APROPOS HOLDINGS, LLC** | |
|     Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | S-08-00088-8-AP |
| **ABDOULIE MADIKAY FAAL** | |
|     Defendant. | |

**MEMORANDUM OPINION**

The trial of this adversary proceeding to determine, pursuant to 11 U.S.C. § 523(a)(6), the dischargeability of a debt owed by the defendant, Abdoulie Madikay Faal, to the plaintiff, Apropos Holdings, LLC, was held in Raleigh, North Carolina on March 12, 2009. For the reasons that follow, judgment will be entered in favor of the defendant.

Abdoulie Madikay Faal and Binneh Bayo Faal filed a joint petition for relief under chapter 11 of the Bankruptcy Code on January 23, 2008, and the case was converted to one under chapter

7 on July 11, 2008. The plaintiff, Apropos Holdings, LLC, filed the complaint in this adversary proceeding to determine, pursuant to § 523(a)(6), whether a portion of the judgment it obtained against Mr. Faal in state court is nondischargeable.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I), which this court may hear and determine.

Apropos leased a commercial building to Mr. Faal and his business, Faal Specialty Food Distributing Company, LLC, in June 2000. The lease had a three-year term, and at some time was extended. After Mr. Faal repeatedly defaulted on his rent payments, either by failing to pay or by paying with checks returned for insufficient funds, Apropos terminated the lease, but Mr. Faal held over his possession. In December 2006, a state court judge entered an eviction order giving Mr. Faal 10 days to vacate. Mr. Faal requested additional time, and Apropos agreed to give Mr. Faal 30 days to vacate. However, Mr. Faal did not begin vacating the premises until March 11, 2007.

Mr. Faal used the premises for his food distribution business, which required upfitting the premises with forklift-accessible freezers, refrigerators, and storage racks. The lease required Mr. Faal to make repairs and replacements to the premises, and to restore the premises to its original condition upon vacating the property. Apropos contends that not only did Mr. Faal do significant damage to the premises both during installation and removal of the equipment, but that the damage was willfully and maliciously inflicted. Prior to the filing of the petition, Apropos obtained a state court judgment by default, which included recovery for missed rent payments, returned checks,

2

unpaid or late utility payments, failure to pay taxes, and damage to the property. Apropos maintains that the portion attributable to the property damage, $47,835, is excepted from discharge because it is a debt "for willful and malicious injury by the debtor . . . to the property of another entity." 11 U.S.C. § 523(a)(6).

Specifically, the complaint alleges that Mr. Faal caused the following damage:

a. Removal of the structure's internal copper water lines;
b. Removal of all conduits from the breaker box on premises and damage to the building's three-phase breaker box from attempts to remove;
c. Disconnection of exit signs, outlets, and overhead lighting;
d. Destruction of floor drain pump systems and waste pipes;
e. Damage to two inches of surface concrete due to the debtor or debtor's employee's use of sledge hammers on warehouse floors;
f. Several holes at least five inches wide left in block exterior walls;
g. Destruction of automatic dock leveler;
h. Damage to building from attempted removal of drive-in freezers and refrigerators/racks, which were bolted to the floors, roof, and walls;
i. Permanent damage to both front and back gates and fence surrounding property;
j. Permanent damage to concrete in outside docks;
k. Damage to dumpster retaining walls;
l. Damage to outside facade brickwork in numerous locations; and
m. Permanent damage from core drilling the interior floors to install five-inch wide bollards.

Complaint at ¶ 15. The complaint also alleges that the damage to property required repairs in the amount of $47,835, though Curt Olson, the manager of Apropos, testified that he actually spent over $172,000 repairing the property after Mr. Faal vacated the premises.

Mr. Olson testified that when Mr. Faal moved into the premises, he made several structural alterations including building an office, installing a floor drain, and installing the freezers, refrigerators and racks. Mr. Olson contends that the manner in which the freezers, refrigerators and racks were installed caused unnecessary damage to the building, including holes left in the block exterior walls and core drilling the interior floors to install bollards. He also testified that the damage to the outside of the building, including the destruction of the automatic dock leveler,

3

damage to the gates and fence, damage to the concrete in the outside docks, damage to the dumpster retaining walls, and damage to the outside facade brickwork, was most likely caused by the delivery trucks used in the operation of Mr. Faal's business.

Mr. Olson also testified that he was on the premises on March 11, 2007, and on March 30, 2007. On March 30, he discovered damage that he had not observed on his March 11 visit. This included the removal of copper water lines, the removal of conduits from the breaker box and damage to the three-phase breaker box, damage to the floor drain pump system, and damage to the floors and walls from the removal of the bolted-in freezers, refrigerators, and racks. Most significantly, though, Mr. Olson testified that a portion of the floor where no equipment had been installed appeared to have been repeatedly hit with a sledgehammer, and that one wall of the office also appeared to have been hit with a sledgehammer. Mr. Olson testified that he believed the damage was intentionally inflicted, and that Mr. Faal had done so out of beligerence.

The court also heard the testimony of Randy Messick, the owner of Southeastern Refrigeration, who was hired by Mr. Faal to remove the refrigeration equipment. Mr. Messick testified that the removal of such equipment always causes damage to the walls and floor that would have to be repaired. He further testified that there were significant holes left in the walls at Mr. Faal's location, and that he was aware that the copper water lines were loaded on Mr. Faal's trucks to go to his new location.

At the close of the plaintiff's evidence, Mr. Faal moved for a judgment on partial findings pursuant to Rule 52(c) of the Federal Rules of Civil Procedure, made applicable in this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure, contending that the plaintiff had not met its burden of proving that Mr. Faal willfully or maliciously caused any of the damage in

question. The court agrees that there was no evidence that the damage caused by the installation of the equipment or caused by the delivery trucks was willful or malicious, and indicated from the bench that Mr. Faal did not need to present evidence regarding the damage itemized in paragraph 15(f), (g), (i), (j), (k), (l), and (m) of the complaint. At most, this damage was caused by negligence, and while the failure to repair the damage is a breach of contract, it does not rise to the level of willful and malicious injury to property.

With respect to the remaining allegations, Mr. Faal testified that the copper water lines were part of the refrigeration systems that ran from the coolers to the plumbing lines running across the ceiling. He maintained that the copper lines belonged to him and were removed by Southeastern as part of the overall equipment removal. Similarly, the electrical conduits were part of the refrigeration equipment, and they were removed where they connected into the breaker box. However, Mr. Faal testified that the remainder of the electrical system was left intact, and that the lights were operational when he left the premises. He stated that the exit signs had never been connected, and he did not disconnect them or cause them to be operational.

Mr. Faal testified that the drain pumps are still in working condition, and that the other damage to the building was incidental to the removal of the bolted-in coolers and racks. He denied that anyone used a sledgehammer on the floors, noting that he had never had a sledgehammer in the building. He surmised that the damage to the floor may have been caused by the forklifts and other equipment necessary to remove the freezers and refrigerators. Mr. Faal also denied intentionally damaging the wall to the office, and explained that coolers had been installed against the office wall, creating a hole in the wall when the coolers were removed.

Willful and malicious injury to property is difficult to prove. In this case, the evidence clearly shows a breach of the lease agreement requiring Mr. Faal to repair damage created by changes to the building's infrastructure. However, there is a disagreement as to who owned copper water pipes and conduits, and there is a colorable argument that these items belonged to Mr. Faal. They were installed with the refrigeration equipment, and were not built into the infrastructure of the building. Though Mr. Faal's removal of these items may have been wrongful, it was not willful and malicious. The court was most concerned about the damage to the office wall and the open portion of the floor, but Mr. Faal explained that the office wall had equipment bolted to it and was damaged during removal, and there is insufficient evidence that anyone intentionally damaged the floor or had any motivation to do so.

Accordingly, the court finds that Apropos failed to show that the damage to the building was caused willfully and maliciously, and concludes that the state court judgment for the property damage is not excepted from discharge pursuant to § 523(a)(6). A separate judgment will be entered accordingly.

**END OF DOCUMENT**